# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 18-08 |
| RANDOLPH ARD | SECTION "L" |

## ORDER AND REASONS

Before the Court is Defendant Randolph Ard's Motion to Suppress Evidence. R. Doc. 25. The Government opposes. R. Doc. 32. On September 27, 2018, the Court held an evidentiary hearing, and Defendant submitted supplemental briefing. R. Doc. 39. Having considered the parties' briefs, the applicable law, and heard the parties on oral argument, the Court now issues this Order and Reasons.

### I.  BACKGROUND

Defendant Randolph Ard ("Ard") is charged with Possession of Child Pornography. The evidence in this case was discovered during a probation visit to Ard's residence pursuant to a state-court probation sentence. Ard moves to suppress the evidence seized from his home and inculpatory statements made while in custody, arguing that (1) his probation sentence was unlawful, or (2) the search of his home exceeded the scope of a reasonable probation visit.

Ard was charged in the Twenty-First Judicial District Court for the Parish of Tangipahoa with two counts of Molestation of a Juvenile, two counts of Indecent Behavior with a Juvenile, and two counts of Pornography Involving Juveniles on September 27, 2010. Then, on February 9, 2012, Ard was charged in Tangipahoa Parish with fifteen counts of Pornography Involving Juveniles. He was represented by counsel in both matters.

On March 6, 2013, Ard entered a no contest plea of guilty to one count of Indecent

1

Behavior with a Juvenile and two counts of Pornography Involving Juveniles before Judge Douglas Hughes. His plea was pursuant to a plea agreement with an agreed upon sentence of nine years, with five years suspended, and a five-year probation sentence upon release.

Ard was sentenced by a different judge, Judge Elizabeth Wolfe, on April 2, 2013. Judge Wolfe sentenced Ard consistent with the plea agreement, but neglected to advise him of his five-year term of probation upon release. On May 1, 2013, Ard reappeared before Judge Hughes, who originally presided over Ard's guilty plea. Judge Hughes explained Ard's sentence, reiterated the parties' understanding of the plea agreement, and advised Ard that his sentence included a five-year term of probation upon release. Ard did not appeal his sentence.

On November 21, 2017, Ard reported to the Louisiana Probation and Parole Office with a broken GPS unit. Louisiana Probation and Parole ("LAPP") Specialist Brian Phillips ("Specialist Phillips") checked the GPS log of the unit and discovered that Ard had been tampering with his GPS since at least November 4, 2017. Specialist Phillips advised his supervisor of Ard's violations and contacted LAPP Agents Blake Phillips ("Agent Phillips") and Shirley Verberene ("Agent Verberene"). The agents went to Ard's residence, placed him in handcuffs, and informed him that he was being detained pending an investigation of potential violations for tampering with his GPS unit.

Under the terms of his probation, Ard was forbidden from using any social media sites. He was made aware of these terms upon release – the conditions of probation were read to him and he was required to acknowledge them with his signature. R. Doc. 32-6. Specialist Phillips, however, noticed an unlocked and illuminated computer tablet opened to the game "Candy Crush" inside Ard's home. Aware of the social media platform attached to the game, Specialist Phillips proceeded to check the tablet's internet history. Facebook and Twitter were the first two links that

appeared.

Specialist Phillips advised Ard that he was under arrest for violating his probation and read him his *Miranda* rights. When Specialist Phillips informed Ard that he would check his computer and other electronic devices for further violations, Ard replied "why don't you just go ahead and shoot me and get it over with." The agents located a USB drive, inserted it into Ard's computer, and found several images of what appeared to be pornographic pictures of prepubescent female children. Specialist Phillips contacted Supervisor John Rohner, who advised him to contact the Attorney General's Office, Louisiana Bureau of Investigation ("LBI") Internet Crimes Against Children Unit. Special Agent Preston Bennett advised Specialist Phillips to gather all electronic devices from Ard's home and wait for a member of their team to arrive.

LBI Special Agents arrived at the scene and located hundreds of files and images of child pornography, and informed Ard that the evidence would be confiscated and subjected to a forensic search. Ard was re-read his *Miranda* rights, signed a written copy of his *Miranda* rights, and admitted to possession of child pornography during the post-*Miranda* interview. Ard was transported to the Tangipahoa Parish Prison and booked for probation violations and Possession of Pornography Involving Juveniles.

On December 1, 2017, LBI Special Agent Bennett turned the seized evidence over to Special Agent Steve Dean with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"). Special Agent Dean sought and obtained a federal search warrant for HSI computer examiners to conduct a forensic search of the electronic media seized from Ard's residence. HSI computer forensic examiners located 6,806 images and 14 videos of child pornography on Ard's thumb drive, and 725 images on his computer.

**II.     PRESENT MOTION**

Ard moves to suppress the evidence seized from his home. First, he argues that the evidence must be suppressed because it was discovered pursuant to an illegally amended probation sentence. Louisiana Code of Criminal Procedure, Article 881(A) allows a trial court to amend a sentence "prior to the beginning of execution of the sentence." After execution, the court is authorized to correct *illegal* sentences. *See State v. Quang T. Do*, 13-290 (La. App. 5 Cir. 11/19/13), 130 So.3d 377, 393; *State v. Mitchell*, 84-279 (La. App. 3 Cir. 3/6/85); 466 So.2d 514, 518. Finally, under Article 881.1, the state or a defendant may move the court to reconsider a sentence, either orally at the time of sentencing or via motion filed within 30 days of imposition of sentence.

Ard argues that (1) his original sentence was not illegal, (2) the state failed to move the court to reconsider at the time of sentencing, and (3) the record does not show that the state filed a written motion to reconsider within the 30-day limit. Accordingly, Ard contends that the trial court was divested of authority to increase the severity of his sentence by adding the five-year probation term after the sentence had been executed. Even if the probation sentence was lawful, Ard argues that the evidence must be suppressed because the search of his residence exceeded the scope of a reasonable probation visit.

The Government opposes, arguing that (1) prior state-court sentences cannot be collaterally attacked in federal court, and (2) the evidence was discovered during a reasonable probation search supported by reasonable suspicion.

### III. LAW AND ANALYSIS

#### a. State-Court Probation Sentence

In *Custis v. United States*, the Supreme Court held that with the sole exception of convictions obtained in violation of the right to counsel, a defendant in a federal sentencing proceeding has no right to collaterally challenge the validity of previous state convictions that are

4

used to enhance his sentence. 511 U.S. 485, 497 (1994). Two considerations supported this conclusion: ease of administration and an interest in promoting the finality of judgments. *Id.* at 496-97. First, extending the right to collaterally attack a prior conviction beyond the failure to appoint counsel – which will generally appear on the judgment roll itself, or on an accompanying order – would "require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 states." *Id.* at 496. Second, the Court reasoned that "[i]nroads on the concept of finality" tend to undermine confidence in the integrity of the judicial system and delay and impair the orderly administration of justice. *Id.* Moreover, by collaterally attacking a prior conviction, a defendant "is asking a district court 'to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t].'" *Id.* at 497 (quoting *Parke v. Raley*, 506 U.S. 20, 20 (1992)).

The Fifth Circuit, recognizing *Custis*, has held that "absent an allegation that the defendant was denied counsel in the prior proceeding, a district court sentencing a defendant may not entertain a collateral attack on a prior conviction used to enhance the sentence unless such attack is otherwise recognized by law." *United States v. Bams*, 858 F.3d 937, 948 (5th Cir. 2017).

Ard argues that *Custis* and *Bams* do not apply here, because (1) he challenges a state-court *sentence* rather than a conviction; (2) his case involves the Fourth Amendment rather than sentence enhancements; and (3) the supporting considerations are not present. The Court disagrees. Allowing a federal defendant to collaterally challenge a state-court sentence on a motion to suppress after being indicted on new federal charges would require district courts to sift through documents and transcripts from long-past proceedings in a different jurisdiction and deprive the state-court sentence of its normal force and effect in a proceeding that has an independent purpose

5

other than to overturn it.

Ard neglected the proper channel of challenging his amended sentence and instead attempted to collaterally attack it after being indicted on new federal charges five years later. The Constitution affords him the right to appeal his sentence, but it does not afford him the right to challenge it here. *See Daniels v. United States*, 532 U.S. 374, 381 (2001) ("Our system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction … These vehicles for review, however, are not available indefinitely and without limitation."). Ard does not allege that he was denied the right to counsel and cannot show that the law affords him the right to collaterally attack his state-court sentence. The record reflects that Ard was represented by an attorney in state court at all stages. Moreover, Ard's plea was pursuant to a plea agreement whereby he specifically agreed to a five-year probation sentence upon release from state custody. R. Doc. 28-1 at 30.

**b. Reasonable Scope of Probation Search**

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The Court determines whether a search is reasonable under the totality of the circumstances, and must balance "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006). At the time of the search, Ard was serving a state-court probation sentence.

Probationers "do not enjoy the absolute liberty to which every citizen is entitled, but only … conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). To that end, "reasonable restrictions upon liberty

and privacy are allowed and are necessary to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." *United States v. LeBlanc*, 490 F.3d 361, 365-66 (5th Cir. 2007) (quoting *Griffin*, 483 U.S. at 875). These probation conditions "significantly diminish [a probationer's] reasonable expectation of privacy." *United States v. Knights*, 534 U.S. 112, 120 (2001).

Governmental interests are heightened in this context, because probationers are "more likely than the ordinary citizen to violate the law" and have "even more incentive to conceal their criminal activity and quickly dispose of incriminating evidence." *Id.* This "special need of the State permit[s] a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *LeBlanc*, 490 F.3d at 366.

"[T]he balance of these considerations requires no more than reasonable suspicion" to conduct a warrantless search of a probationer's residence. *Knights*, 534 U.S. at 121 (upholding a warrantless non-consensual search of a probationer's home based on reasonable suspicion where probationer agreed to searches as a condition of probation); *see also United States v. Keith*, 375 F.3d 346, 347 (5th Cir. 2004) (upholding warrantless non-consensual search of probationer's home based on reasonable suspicion where neither state regulation nor a condition of probation specifically authorized the search). Reasonable suspicion exists where an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

Ard contends that he maintained a reasonable expectation of privacy in his electronic devices. Ard signed his Conditions of Probation on November 12, 2015, in which he expressly agreed to:

> searches of his person, *his property*, his place of residence, his vehicle, or *his personal effects,* or any or all of them, at any time, by the probation officer or the

parole officer assigned to him, with or without a warrant of arrest or with or without a search warrant, when the probation officer or parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.

R. Doc. 32-5 at 2 (emphasis added).

Ard's Sex Offender, Sexually Violent Predator or Child Predator Contract ("Sex Offender Contract") specifically states that he is "not allowed to use or access any social networking website." R. Doc. 32-6 at 4. It further provides that Ard's home "will be subject to random visits by [his] Probation and Parole Officer," during which they "may conduct random residence inspections or checks." *Id.* Finally, the Sex Offender Contract expressly states that Ard "will be subject to Probation and Parole Officers electronically inspecting any and all computers, computerized devices, and portable media devices to which [he] [has] access, for the limited purpose of detecting content prohibited by conditions of supervision." *Id.* Ard signed and dated that he understood and agreed to the Sex Offender Contract on November 12, 2015. *Id.* at 6.

The evidence in this case was discovered during a reasonable probation search. Ard contends that there was no reasonable suspicion because the agents did not testify that they noticed actual *use* of social media platforms. However, the record and testimony reflects an increasingly suspicious set or circumstances that led to the discovery of the evidence.

LAPP agents arrived at Ard's residence after discovering that he had tampered with his GPS unit. Specialist Phillips noticed several electronic devices inside and asked Ard if he was using social media sites. Ard stated that he was not, because that would be a violation of his probation. Ard then became visibly nervous at the mention of his computer tablet. When Specialist Phillips observed that it was unlocked, illuminated, and opened to the game Candy Crush, which has a social media platform, he had reasonable suspicion to believe that Ard was in violation of his probation condition prohibiting the use of social media. Furthermore, Specialist Phillips

8

discovered links to Facebook and Twitter in the tablet's internet history. The search of Ard's residence was justified by the conditions of his probation and the agents' reasonable suspicion of criminal activity.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Suppress, R. Doc. 32, is hereby **DENIED**.

New Orleans, Louisiana, this 1st day of November 2018.

_____
UNITED STATES DISTRICT COURT JUDGE